# UNITED STATES DISTRICT COURT
## for the
### Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br><br>Philip Joseph Rivkin, a.k.a.<br>Felipe Poitan Arriaga<br><br>Defendant(s) | Case No. H-14-603M<br><br>United States Courts<br>Southern District of Texas<br>FILED<br>JUN 1 2 2014<br>David J. Bradley, Clerk of Court |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **February 2009 - January 2012** in the county of **Harris** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. Sections 1341 and 1343 | Mail fraud and wire fraud, respectively |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Lea C. Bauer, United States Secret Service.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Lea C. Bauer, U.S.S.S.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 06/12/2014

_____
*Judge's signature*

City and state: Houston, Texas

Frances H. Stacy, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Lea C. Bauer, being duly sworn, depose and state as follows, in support of a criminal complaint:

### Agent Background

1. I am a Special Agent of the United States Secret Service (USSS), presently assigned to the Houston Area Fraud Task Force, a section of the USSS Houston Field Office, Houston, Texas. I have been a Special Agent with the USSS for 15 years. I have received training and instruction in federal criminal laws and fraud concerning financial institutions at the Federal Law Enforcement Training Center in Glynco, Georgia, and the James J. Rowley Training Center in Beltsville, Maryland. I am authorized under Title 18, United States Code, Section 3056(b) to conduct criminal investigations concerning any of the laws of the United States relating to electronic fund transfer frauds, access device frauds, false identification documents or devices, and fraud or other criminal or unlawful activity in or against any federally insured financial institution. I am further authorized by 18 U.S.C. § 3056(c) to execute warrants issued under the laws of the United States and make arrests, based upon probable cause, for any felony cognizable under the laws of the United States. I am experienced in the investigation of offenses involving wire fraud and mail fraud.

2. The information in this Affidavit is based on my review of reports and notes related to this case, my conversations with other law enforcement personnel, and information from other sources.

3. The information in the Affidavit is not an exhaustive account of the knowledge of the USSS concerning the events described. Rather, this is a summary submitted for the purpose of establishing probable cause in support of a criminal complaint and arrest warrant. Where the

1



content of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, dates, and times are reported herein, they are approximate.

**Legal Background**

4. Pursuant to the Energy Policy Act of 2005 and the Energy Independence and Security Act of 2007, the United States Environmental Protection Agency ("EPA") was required to establish a program to incorporate renewable fuel into the national fuel mix, with the volume of renewable fuel increasing annually from 4 billion gallons in 2006 to 36 billion gallons in 2022. Gasoline and diesel refiners and importers of petroleum are collectively responsible for meeting the annual renewable fuel volume obligation and may satisfy their renewable fuel obligation by (1) producing or importing qualifying renewable fuels or (2) obtaining tradable credits (described below) based on qualifying renewable fuels that others have produced or imported.

5. As part of the program, EPA established a system of tradable credits for renewable fuels to facilitate compliance by the petroleum refiners and importers who were collectively responsible for meeting the annual renewable volume obligation. These tradable credits are known as Renewable Identification Numbers or RINs. Each RIN is a unique identifier for a volume of renewable fuel and identifies the type and origin of the renewable fuel, including the specific facility that produced the renewable fuel. RINs are the basic currency for the renewable fuel program and are used by gasoline and diesel producers and importers to satisfy the requirement that they introduce renewable fuel into the nation's fuel stream. RINs can be legally traded and have significant monetary value.

Sealed

6. RINs are generated by a producer or importer of renewable fuel. As of July 1, 2010, RIN transactions may only be made through the EPA Moderated Transaction System ("EMTS"), which is an internet-accessible transaction platform, managed by the EPA. EMTS is used by regulated parties to generate RINs, to separate them from the fuel they are initially associated with, and to sell them. Gasoline and diesel producers and importers use EMTS to satisfy their renewable fuel obligations by retiring RINs. There are reporting and record keeping requirements for all producers of renewable fuel, including quarterly RIN generation reports. 40 C.F.R. § 80.1451(b). It is illegal for a producer or importer of renewable fuel to generate a RIN for renewable fuel that was not produced. 40 CFR § 80.1460(b)(1).

**Facts Supporting Probable Cause (Wire Fraud and Mail Fraud)**

7. From in or about February 2009 to at least January 2012, Philip Joseph Rivkin ("Rivkin") (also known as Felipe Poitan Arriaga), the owner and CEO of Green Diesel, LLC ("Green Diesel") and Fuel Streamers, LLC ("Fuel Streamers"), fraudulently created and sold RINs for renewable fuels that were never produced.

8. From in or about February 2009 to at least January 2012, having devised a scheme or artifice to defraud, and to obtain money or property by means of false and fraudulent pretenses, representations, and promises, Rivkin deposited and caused to be deposited certain matters or things to be sent or delivered by a private or commercial interstate carrier for the purpose of executing such scheme or artifice, in violation of 18 U.S.C. § 1341 and transmitted and caused to be transmitted by means of wire communication in interstate commerce certain

3



writings and signals for the purpose of executing such scheme or artifice, in violation of 18 U.S.C. § 1343.

9. Based on the investigation in this case, including information provided by and through a variety of sources, there is probable cause to believe that from in or about February 2009 and continuing through January 2012, in the Southern District of Texas and elsewhere, Rivkin devised and intended to devise a scheme to defraud the EPA, various oil companies, brokers, and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as more fully described below. EPA official government records reflect the following:

a. On or about February 3, 2009, Rivkin registered with EPA's Central Data Exchange ("CDX"), via wire, and established a "User ID" of PRIVKIN2, with pjr@dollarbill.net listed as Rivkin's email contact.

b. On or about March 6, 2009, Rivkin submitted a letter to EPA acknowledging that the Green Diesel biodiesel plant was located at 7600 JW Peavy St., Houston, Texas, 77012, that Rivkin held the title of "CEO" of Green Diesel, that the Green Diesel office was located at 1800 West Loop South, Suite 725, Houston, Texas, 77027, and that, for the purpose of transacting in RINs, the Green Diesel company ID was 4674 and its facility ID was 82552.

c. In a letter dated March 26, 2009, on Green Diesel letterhead, Rivkin authorized Green Diesel Business Administrator S. N. to submit reports to EPA on Rivkin's behalf.

Sealed
[illegible stamp]

d. On or about March 26, 2009, Rivkin submitted to EPA a "new Registration Report" for Green Diesel that identified Green Diesel's activities as "Refiner, Biodiesel Producer." This report was signed by Rivkin.

e. On or about April 26, 2009, Rivkin submitted to EPA a Digital Signature Agreement and New Registration Report as "CEO" and "RCO" (responsible corporate officer) of Green Diesel, with pjr@dollarbill.net listed as Rivkin's email contact. Rivkin signed the New Registration Report attesting that all the information on the document was correct.

f. On or about June 4, 2009, Rivkin submitted to EPA a Company Information Report form for Green Diesel, listing the activities of Importer, Refiner, RIN Owner, and Biodiesel Producer, with Rivkin signing the document as RCO and attesting that all information on the document was correct.

g. In a letter dated June 23, 2009, on Green Diesel letterhead, Rivkin submitted updated facility information on Green Diesel, including contact information that listed phil@greendiesellc.com as an email address for Rivkin.

10. Through the above actions and documents submitted to EPA, Rivkin represented to EPA and to Green Diesel's customers that the Green Diesel facility was an operating biodiesel production plant. Your Affiant and other agents involved in this investigation interviewed employees and engineers of the Green Diesel facility, namely D.K. and H.G. on several occasions from September 25, 2013 to November 18, 2013. Both employees stated that the plant never operated properly and never made on-specification biodiesel, except for a small test batch

in 2008. D.K. and H.G. also stated that Rivkin was fully aware that the plant was not operating and was not producing biodiesel.

11. Official government records obtained from the EPA and the IRS reveal that Rivkin submitted additional false documentation to the EPA, submitted fraudulent tax credit claims to the Internal Revenue Service ("IRS"), and engaged in commercial transactions involving RINs as further set forth below:

   a. By letter dated November 30, 2009, to an EPA contractor, Rivkin provided a report of Green Diesel biodiesel production between October 2008 through October 2009, claiming that Green Diesel produced 22,135,092 gallons during that time frame and generated 33,202,678 RINs, which is approximately 1.5 times the total claimed gallons as allowed by EPA regulations. According to employees of the Green Diesel facility, Rivkin knew that Green Diesel had not produced any biodiesel during that time.

   b. In 2009, Rivkin, on behalf of Green Diesel, submitted at least 32 IRS Forms 8849 (form for claiming a refund of excise tax credits) to the Internal Revenue Service. Attached to the Forms 8849 were certificates of biodiesel signed by Rivkin that claimed to represent the production by Green Diesel of stated gallons of biodiesel, when, in fact, Green Diesel did not produce any biodiesel in 2009. Pursuant to his filings with the IRS, Rivkin received in excess of $21 million in tax credits.

   c. In a letter dated April 27, 2010, on Green Diesel letterhead with the address 3050 Post Oak, Suite 500, Houston, Texas, Rivkin submitted to EPA updated information regarding Green Diesel, including the following activities: RIN generator, Biodiesel Producer, RIN owner, Refiner. Because the Green Diesel facility was not operational, Rivkin knew that Green Diesel was not a Biodiesel Producer or a Refiner.

d. On or about June 4, 2010, Rivkin submitted to EPA a "Company Information Report" for Green Diesel, now with the company address listed as 3050 Post Oak Blvd., Suite 500, Houston, TX 77056, in which Green Diesel's activities were listed as "Refiner, RIN owner, Renewable Fuels Importer, Biodiesel Producer, Renewable Fuels Exporter." For the process description, the report stated that the plant mixed raw vegetable oil with a catalyst and methanol, after which "an esterification (sic) reaction" took place, and then the oil went through a purification section, including methanol flashing, biodiesel and glycerin separation by gravity, and biodiesel drying and filtering. Rivkin signed this report, attesting that the information was correct, even though Rivkin knew that the Green Diesel facility was not operational.

e. According to an interview with former Green Diesel employee R.P., in 2010 Rivkin directed the employee to sell Green Diesel RINs in 2010 to various oil companies and brokers. Rivkin approved all transactions involving RINs.

f. From October 2010 through July 2011, on at least 25 separate days, Rivkin logged into the EPA's EMTS system using his PRIVKIN2 User ID to generate over 45 million RINs for Green Diesel, fraudulently representing the production of millions of gallons of biodiesel that had not, in fact, been produced by Green Diesel.

g. From January 2011 through July 2011, Rivkin sent out or caused to be sent at least 16 invoices for sales of fraudulent Green Diesel RINs to at least 6 different purchasers, for a total of $25 million.

h. Wells Fargo Bank records reflect that Rivkin used Wells Fargo checking account xxxx7890 in the name of Green Diesel, 3050 Post Oak Blvd., Suite 500, Houston, TX, to receive and transfer proceeds from the sale of the fraudulent Green Diesel RINs.

i. The companies that purchased the false RINs wired their payments from various locations to Green Diesel's Houston, Texas bank account at Wells Fargo (account xxxx7890). The account was controlled exclusively by Rivkin.

12. In December 2011, EPA's Air Enforcement Division sent Rivkin an official Request for Information under Section 114(s) of the Clean Air Act, requesting information concerning Green Diesel's renewable fuel production and import activities, as part of a civil investigation into Green Diesel's compliance with Clean Air Act and applicable fuel regulations. On or about January 13, 2012, Rivkin, through his attorney, provided EPA's Air Enforcement Division a false written statement that claimed, among other things, Green Diesel never created or transferred an invalid RIN during the requested time frame (2007 – 2011) and Green Diesel purchased biodiesel from a company called Sonorawest.

13. Rivkin provided documents which purported to show purchases of transesterified soybean oil from Sonorawest by Green Diesel. Investigation revealed these documents to be completely fictitious for the following reasons: (1) Rivkin never purchased or imported the claimed transesterified soybean oil through any of his companies; (2) Sonorawest did not have an office at the address specified on the invoices and never existed at that address; (3) a barge, "HMS 1024," listed on all of the invoices did not exist; and (4) forensic analysis showed that the invoices were created after the date of the information request and thus well after the dates reflected on the invoices.

14. At the end of the written response was a certification signed by Rivkin as CEO of Green Diesel, certifying that the information contained in the response to EPA's request for information and the accompanying documents was "true, accurate, and complete," when, in fact, Rivkin knew the information he provided was false.

15. Bank records reflect, and interviews with purchasers of the fraudulent Green Diesel RINs confirm, that from about January 2011 to about July 2011 Rivkin caused RIN purchasers to transmit by means of wire communication in interstate commerce at least 16 wire transfers of money totaling more than $25 million from accounts held at originator banks in New York and Ohio to Rivkin's Green Diesel account ending in xxxx7890 at Wells Fargo Bank located in Houston, Texas.

16. EPA records show that Rivkin knowingly caused the following fraudulent reports to be delivered by a commercial interstate carrier, namely FedEx, to U.S. EPA, 1310 L Street, NW, Washington, DC 20005.

| Mailing | Date | Report |
|---|---|---|
| 1 | January 24, 2011 | Submission of 2010 third quarter report stating that 4,858,200 RINs were generated by Green Diesel, based on biodiesel production at its facility. |
| 2 | January 24, 2011 | Submission of 2010 fourth quarter report stating that 14,256,327 RINs were generated by Green Diesel, based on biodiesel production at its facility. |
| 3 | May 4, 2011 | Submission of 2011 first quarter report stating that 18,075,300 RINs were generated by Green Diesel, based on biodiesel production at its facility. |

17. Based on the investigation in this case, including information provided by and through a variety of sources, there is probable cause to believe that from about February 2009 to about July 2012, Rivkin sold over 60,000,000 invalid RINs to various energy companies and received approximately $78,000,000 in fraudulent proceeds as a result of these sales.

18. Bank records reflect that from about February 2009 to about July 2012, Rivkin used the money obtained through the scheme to defraud to purchase real and personal luxury

9

property in excess of $25,000,000 and moved more than $210,000,000 million through the Green Diesel account and out to unidentified accounts overseas.

## Conclusion

19. Based on my personal investigation of this case, on information and belief, and on information provided by and through a variety of sources and conversations, there is probable cause to believe that Rivkin violated the laws of the United States, specifically, but not limited to a violation of 18 U.S.C. § 1343, Wire Fraud, and a violation of 18 U.S.C. § 1341, Mail Fraud.

20. Based on the information set forth in this Affidavit, your Affiant respectfully requests that an arrest warrant be issued authorizing the arrest of Philip Joseph Rivkin (also known as Felipe Poitan Arriaga) for these offenses.

_____
Lea C. Bauer
Special Agent
United States Secret Service

Reviewed and Approved:

Leslie Lehnert, Trial Attorney
U.S. DOJ – Environmental Crimes Section

Subscribed to and sworn to before me this 12 day of June, 2014 and I find probable cause.

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE