United States Courts
Southern District of Texas
FILED

JUN 1 9 2014

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL N**H  14  -250** |
| | ) | |
| v. | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1341 |
| | ) | 42 U.S.C. § 7413(c)(2)(A) |
| PHILIP JOSEPH RIVKIN | ) | 18 U.S.C. § 1957 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| a/k/a   FELIPE POITAN ARRIAGA | ) | 18 U.S.C. § 982(a)(1), (b)(1) |
| | ) | |

## INDICTMENT

The Grand Jury charges:

### Introduction

At all times material to this Indictment:

1.     During times relevant to this indictment, Philip Joseph Rivkin ("Rivkin") was a resident of Houston, Texas, who owned, operated, and managed several fuel and renewable fuel companies.  These included Green Diesel, LLC ("Green Diesel"), Fuel Streamers, Inc. ("Fuel Streamers"), and Petro Constructors, LLC ("Petro Constructors").

2.     Green Diesel was formed in Delaware in 2005.  During times relevant to this indictment, Rivkin was Chief Executive Officer of Green Diesel.  During times relevant to this indictment, Green Diesel had office addresses at 1800 West Loop S., Suite 725, Houston, Texas, and 3050 Post Oak Boulevard, Suite 500, Houston, Texas.  Green Diesel purported to produce biodiesel, a renewable fuel, at a facility located at 7600 JW Peavy Street, Houston, Texas, which was sometimes referred to as "7600 Avenue P."

3.      Fuel Streamers was incorporated in Louisiana in 2004.  As of June 21, 2010, Rivkin was Chief Executive Officer of Fuel Streamers.  As of June 21, 2010, the office address for Fuel Streamers was 3050 Post Oak Boulevard, Suite 500, Houston, Texas.

4.      Petro Constructors was formed in Texas in 2007.  During times relevant to this indictment, Rivkin was Chief Executive Officer of Petro Constructors.  During times relevant to this indictment, the office address of Petro Constructors was 3050 Post Oak Boulevard, Suite 500, Houston, Texas.

5.      Sonorawest Co. ("Sonorawest") was incorporated in Florida in 2004 with Rivkin listed as President and Director of the corporation.  In 2009, Rivkin filed a change of address moving Sonorawest's office to 1800 West Loop S., Suite 725, Houston, Texas.  In January 2012, Rivkin filed a change of address moving Sonorawest's principal place of business to Buenos Aires, Argentina.

<u>Renewable Fuel Statutory Background</u>

6.      Renewable fuels are fuels produced from renewable biomass that are used to replace or reduce the quantity of fossil fuel present in transportation fuel, heating oil, or jet fuel. Such fuels include corn-based ethanol and biodiesel.  Biodiesel is a type of renewable fuel that can be used in diesel engines and is typically made from vegetable oils or animal fats.

7.      The Energy Policy Act of 2005 established the nation's first renewable fuel standard ("RFS1"), which mandated that gasoline and diesel refiners and importers (known as "obligated parties") introduce a minimum of 4.0 billion gallons of renewable fuel into the national fuel mix in 2006 and which increased the mandate to 7.5 billion gallons by 2012.  Two years later, the Energy Independence and Security Act of 2007 established a new, expanded

renewable fuels mandate ("RFS2").  RFS2 required the annual use of 9.0 billion gallons of renewable fuels in 2008, rising to 36 billion gallons annually in 2022.  RFS2 applies to all transportation fuel used in the United States.

8.      Under RFS2, obligated parties have a Renewable Volume Obligation ("RVO"), which represents an amount of renewable fuel that they are required to introduce into the non-renewable (fossil) fuel supply each year.  The RVO for an obligated party is based on its annual production and/or imports of gasoline and diesel fuel.  Each year, obligated parties must calculate their RVOs, which they then satisfy by (1) producing or importing qualifying renewable fuels or (2) obtaining tradable credits based on qualifying renewable fuels that others have produced or imported.

9.      The Environmental Protection Agency ("EPA") established a system of tradable credits for renewable fuels to facilitate compliance with RFS1 and RFS2.  These tradable credits are known as Renewable Identification Numbers or RINs.  Each RIN is a unique identifier for a volume of renewable fuel and identifies the type and origin of the renewable fuel, including the specific facility that produced the renewable fuel.  RINs are the basic currency for the RFS1 and RFS2 programs and are used by gasoline and diesel producers and importers to satisfy their RVOs.

10.     RINs are generated by a producer or importer of renewable fuel.  At the beginning of the RFS1 program, RINs were documented through paper filings submitted to the EPA.  In July 2010 with the advent of RFS2, EPA introduced an electronic system for documenting RINs.  Under the electronic system, the producer or importer logs onto an EPA database to generate RINs, resulting in a unique entry in that database associated with a particular volume of fuel.

Biodiesel made from soybean oil feedstock typically is labeled D4 biodiesel and can be used to generate 1.5 RINs per gallon of biodiesel.  Initially, RINs are "assigned" to particular volumes of renewable fuel and must be traded with that fuel, but the regulations allow the RINs to be "separated" from the fuel under certain circumstances and their connection to a physical volume of fuel is broken.  The "separated" RIN can be traded, held for future compliance, or retired to satisfy an obligated party's RVO.

11.     As of July 1, 2010, RIN transactions may only be made through the EPA Moderated Transaction System ("EMTS"), which is the internet-accessible transaction platform described above.  EMTS is used by regulated parties to generate, separate, sell, and retire RINs. All EMTS activity is conducted through EPA's Central Data Exchange ("CDX").  Users of EPA's CDX must create a CDX account with an individual user identification, which is password protected.

12.     RFS2 imposes reporting and record keeping requirements for all producers of renewable fuel, including quarterly RIN generation reports.  40 C.F.R. § 80.1451(b).

13.     It is illegal for a producer or importer of renewable fuel to generate a RIN for renewable fuel that was not produced.  40 CFR § 80.1460(b)(1).

## COUNTS 1 - 16 –  Wire Fraud – 18 U.S.C. § 1343

### THE SCHEME TO DEFRAUD

14.     The Grand Jury re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 13, as if fully set forth herein.

15.     Beginning at a time unknown to the Grand Jury, but no later than February 2009 and continuing through January 2012, in the Southern District of Texas and elsewhere, defendant

-4-

Philip Joseph Rivkin devised and intended to devise a scheme to defraud the U.S. EPA, various oil companies, brokers, and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as more fully described below.  It was part of the scheme to defraud that:

16.     On or about February 3, 2009, Rivkin registered with EPA's Central Data Exchange ("CDX") and established a "User ID" of PRIVKIN2, with pjr@dollarbill.net listed as Rivkin's email contact.

17.     On or about March 6, 2009, Rivkin submitted a letter to U.S. EPA acknowledging that the Green Diesel LLC biodiesel plant was located at 7600 JW Peavey St., Houston, Texas, 77012, that Rivkin held the title of "CEO" of Green Diesel LLC, that the Green Diesel office was located at 1800 West Loop South, Suite 725, Houston, Texas, 77027, and that, for the purpose of transacting in RINs, the Green Diesel company ID was 4674 and its facility ID was 82552.

18.     In furtherance of the scheme to defraud, in a letter dated March 26, 2009, on Green Diesel letterhead, Rivkin authorized Green Diesel Business Administrator S. N. to submit reports to EPA on Rivkin's behalf.

19.     In furtherance of the scheme to defraud, on or about March 26, 2009, Rivkin submitted to EPA a "New Registration Report" for Green Diesel that identified Green Diesel's activities as "Refiner, Biodiesel Producer."  This report was signed by Rivkin.

20.     In furtherance of the scheme to defraud, in April 2009, Rivkin registered with Clean Fuels Clearinghouse ("CFCH") in order for Green Diesel to transmit renewable fuel and RIN-related data to the EPA through the CFCH RINSTAR system, an online renewable fuel and

RIN management system.

21.     In furtherance of the scheme to defraud, on or about April 26, 2009, Rivkin submitted to EPA a Digital Signature Agreement and New Registration Report as "CEO" and "RCO" (responsible corporate officer) of Green Diesel, with pjr@dollarbill.net listed as Rivkin's email contact. Rivkin signed the New Registration Report attesting that all the information on the document was correct.

22.     In furtherance of the scheme to defraud, on or about June 4, 2009, Rivkin submitted to EPA a Company Information Report form for Green Diesel, listing the activities of Importer, Refiner, RIN Owner, Biodiesel Producer, with Rivkin signing the document as Responsible Corporate Officer and attesting that all information on the document was correct.

23.     In furtherance of the scheme to defraud, in a letter dated June 12, 2009, on Green Diesel letterhead, Rivkin submitted updated facility information on Green Diesel, including contact information that listed phil@greendieselllc.com as an email address for Rivkin.

24.     As part of the scheme to defraud, by letter dated November 30, 2009, to an EPA contractor, Rivkin provided a report of Green Diesel biodiesel production between October 2008 through October 2009, claiming that Green Diesel produced 22,135,092 gallons during that time frame and generated 33,202,678 RINs, which is approximately 1.5 times the total claimed gallons. In reality, Rivkin knew that Green Diesel did not produce any biodiesel during that time.

25.     In furtherance of the scheme to defraud, in 2009, Rivkin, on behalf of Green Diesel, submitted at least 32 IRS Forms 8849 to the Internal Revenue Service. Attached to the Forms 8849 were certificates of biodiesel signed by Rivkin that claimed to represent the

production by Green Diesel of stated gallons of biodiesel, when, in fact, Green Diesel did not produce any biodiesel in 2009.  Pursuant to his filings with the IRS, Rivkin received in excess of $21 million in tax credits.

26.     In furtherance of the scheme to defraud, in a letter dated April 27, 2010, on Green Diesel letterhead with the address 3050 Post Oak, Suite 500, Houston, Texas, Rivkin submitted to EPA updated information regarding Green Diesel, including the following activities:  RIN generator, Biodiesel Producer, RIN owner, Refiner.

27.     In furtherance of the scheme to defraud, in a letter dated May 4, 2010, on Green Diesel letterhead, Rivkin authorized Trading Manager A.P. to submit reports to EPA on Rivkin's behalf.

28.     In furtherance of the scheme to defraud, in a letter dated June 2, 2010, on Green Diesel letterhead, Rivkin submitted to EPA updated information regarding Green Diesel, including the following activities:  Renewable Fuels Importer, Biodiesel Producer, Refiner, Renewable Fuels Exporter, RIN owner.

29.     On or about June 4, 2010, Rivkin submitted to EPA a "Company Information Report" for Green Diesel, now with the company address listed as 3050 Post Oak Blvd., Suite 500, Houston, TX, 77056, in which Green Diesel's activities were listed as "Refiner, RIN owner, Renewable Fuels Importer, Biodiesel Producer, Renewable Fuels Exporter."  For the process description, the report stated that the plant mixed raw vegetable oil with a catalyst and methanol, after which "an estrification [sic] reaction" took place, and then the oil went through a purification section, including methanol flashing, biodiesel and glycerin separation by gravity,

and biodiesel drying and filtering.  Rivkin signed this report, attesting that the information was correct, even though Rivkin knew that the Green Diesel facility was not operational.

30.     As part of the scheme to defraud, Rivkin directed a Green Diesel employee to sell Green Diesel RINs in 2010 to various oil companies and brokers.  Rivkin approved all transactions involving RINs.

31.     In furtherance of the scheme to defraud, in July 2010, Rivkin directed a Green Diesel employee to execute an "Exclusive Service Agreement" with CFCH, in order for Green Diesel to transmit renewable fuel and RIN-related data to the EPA through the CFCH RINSTAR system, an online renewable fuel and RIN management system.

32.     In furtherance of the scheme to defraud, from October 2010 through July 2011, on at least 25 separate days, Rivkin logged into the EPA's EMTS system using his PRIVKIN2 User ID to generate over 45 million RINs for Green Diesel, fraudulently representing the production of millions of gallons of biodiesel that had not, in fact, been produced by Green Diesel.

33.     As part of the scheme to defraud, from January 2011 through July 2011, Rivkin sent out or caused to be sent at least sixteen invoices for sales of fraudulent Green Diesel RINs to at least six different purchasers, for a total of at least $25 million.

34.     In furtherance of the scheme to defraud, Rivkin used the following bank accounts to receive and transfer proceeds from the sale of the fraudulent Green Diesel RINS:

    a.     Wells Fargo checking account xxxx7890 in the name of Green Diesel,
            3050 Post Oak Boulevard, Suite 500, Houston, Texas;

    b.     Wells Fargo checking account xxxx7900 in the name of Fuel Streamers,

3050 Post Oak Boulevard, Suite 500, Houston, Texas;

c.    Wells Fargo checking account xxxx5904 in the name of Philip J. Rivkin, Houston, Texas;

d.    Wells Fargo checking account xxxx3016 in the name of Petro Constructors, 3050 Post Oak Boulevard, Suite 500, Houston, Texas;

e.    Wells Fargo checking account xxxx7576 in the name of Fuel Streamers, 3050 Post Oak Boulevard, Suite 500, Houston, Texas.

35.    The companies that purchased the false RINs wired their payments from various locations to Green Diesel's Houston, Texas, bank account at Wells Fargo (account xxxx7890). The account was controlled exclusively by Rivkin.

36.    In December 2011, EPA's Air Enforcement Division sent Rivkin an official Request for Information under Section 114(a) of the Clean Air Act, requesting information concerning Green Diesel's renewable fuel production and import activities, as part of a civil investigation into Green Diesel's compliance with the Clean Air Act and applicable fuel regulations.

37.    It was further part of the scheme to defraud that on or about January 13, 2012, Rivkin, through his attorney, provided EPA's Air Enforcement Division a false written statement that, among other things:

a.    Green Diesel did not create fraudulent RINs during the requested time frame (2007 to 2011); and

b.    Green Diesel purchased biodiesel from a company called Sonorawest.

38.     It was further part of the scheme to defraud that Rivkin provided to EPA false documents, which purported to show purchases of transesterified soybean oil from Sonorawest by Green Diesel.  These documents were false because:

a.     Rivkin never purchased or imported the claimed transesterified soybean oil through any of his companies;

b.     Sonorawest did not have an office at the address specified on the invoices and never existed at that address;

c.     the barge HMS 1024 listed on all of the invoices did not exist; and

d.     the invoices were created after the date of the information request and thus after the dates reflected on the invoices.

39.     It was further part of the scheme to defraud that at the end of the written response was a certification signed by Rivkin, as Chief Executive Officer of Green Diesel, certifying that the information contained in the response to EPA's request for information and the accompanying documents was "true, accurate, and complete," when, in fact, Rivkin knew that the information he provided was false.

## EXECUTION OF THE SCHEME TO DEFRAUD

40.     From in or about July 2010 to in or about January 2012, in the Southern District of Texas and elsewhere, defendant Philip Joseph Rivkin, for the purpose of executing the scheme described above, transmitted and caused purchasers to transmit by means of wire communication in interstate commerce the following wire transfers of money from accounts held with the listed originator banks to the Green Diesel account ending in xxxx7890 at Wells Fargo Bank located in

Houston, Texas, each wire payment transmission constituting a separate count:

| Count | Date | Purchaser | Amount | Beneficiary | Originator |
|-------|------|-----------|--------|-------------|------------|
| 1 | January 28, 2011 | Conoco Phillips | $1,489,200.00 | WFB -x7890 Houston, TX | Deutsche Bank Trust Americas, NY, NY |
| 2 | February 7, 2011 | Tesoro | $510,000.00 | WFB -x7890 Houston, TX | JPMorgan Chase, NY, NY |
| 3 | February 22, 2011 | Conoco Phillips | $1,780,000.00 | WFB -x7890 Houston, TX | Deutsche Bank Trust Americas, NY, NY |
| 4 | March 7, 2011 | Conoco Phillips | $1,780,000.00 | WFB -x7890 Houston, TX | Deutsche Bank Trust Americas, NY, NY |
| 5 | March 8, 2011 | Lansing | $2,380,000.00 | WFB -x7890 Houston, TX | Bank of America, NY, NY |
| 6 | March 29, 2011 | Sunoco | $1,100,000.00 | WFB -x7890 Houston, TX | JPMorgan Chase, NY, NY |
| 7 | March 30, 2011 | Marathon | $553,750.00 | WFB -x7890 Houston, TX | PNC Bank, Cleveland, OH |
| 8 | April 8, 2011 | Citgo | $2,220,000.00 | WFB -x7890 Houston, TX | Citibank, NY, NY |
| 9 | April 11, 2011 | Marathon | $997,500.00 | WFB -x7890 Houston, TX | PNC Bank, Cleveland, OH |
| 10 | June 7, 2011 | Conoco Phillips | $1,920,000.00 | WFB -x7890 Houston, TX | Deutsche Bank Trust Americas, NY, NY |
| 11 | June 15, 2011 | Sunoco | $1,130,000.00 | WFB -x7890 Houston, TX | JPMorgan Chase, NY, NY |
| 12 | June 23, 2011 | Sunoco | $3,390,000.00 | WFB -x7890 Houston, TX | JPMorgan Chase, NY, NY |
| 13 | June 27, 2011 | Marathon | $1,410,000.00 | WFB -x7890 Houston, TX | PNC Bank, Cleveland, OH |

| 14 | June 29, 2011 | Conoco Phillips | $1,920,000.00 | WFB -x7890 Houston, TX | Deutsche Bank Trust Americas, NY, NY |
| 15 | July 11, 2011 | Citgo | $1,860,000.00 | WFB -x7890 Houston, TX | Citibank, NY, NY |
| 16 | July 22, 2011 | Conoco Phillips | $1,920,000.00 | WFB -x7890 Houston, TX | Deutsche Bank Trust Americas, NY, NY |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 17 - 19 – Mail Fraud – 18 U.S.C. § 1341

41.     The Grand Jury realleges and incorporates by reference the allegations contained

in Paragraphs 1 through 13 and paragraphs 15 through 40, as if fully set forth herein.

42.     From in or about July 2010 to in or about January 2012, in the Southern District

of Texas and elsewhere, defendant Philip Joseph Rivkin, for the purpose of executing the

aforesaid scheme and artifice to defraud and attempting to do so, did knowingly cause to be

delivered by a commercial interstate carrier, namely FedEx, letters with the following reports

attached to U.S. EPA, 1310 L Street, NW, Washington, DC 20005, on or about the following

dates, each mailing constituting a separate count:

| Count | Date | Report |
| --- | --- | --- |
| 17 | January 24, 2011 | Submission of 2010 third quarter report stating that 4,858,200 RINs were generated by Green Diesel, based on biodiesel production at its facility. |
| 18 | January 24, 2011 | Submission of 2010 fourth quarter report stating that 14,256,327 RINs were generated by Green Diesel, based on biodiesel production at its facility. |

| 19 | May 4, 2011 | Submission of 2011 first quarter report stating that 18,075,300 RINs were generated by Green Diesel, based on biodiesel production at its facility. |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS 20 - 22 – CAA False Statements – 42 U.S.C. § 7413(c)(2)(A)

43.     The Grand Jury realleges and incorporates by reference the allegations contained in Paragraphs 1 through 13, Paragraphs 15 through 40, and Paragraph 42, as if fully set forth herein.

44.     On or about the dates set forth below, in the Southern District of Texas and elsewhere, defendant Philip Joseph Rivkin knowingly made false material statements and representations in records, reports, and other documents required to be filed and maintained pursuant to the Clean Air Act, namely by submitting to EPA, on the following dates, reports stating that the specified number of RINs were generated and the specified volume of biodiesel had been produced, when, in fact, as Rivkin well knew, no biodiesel had been produced and the RINs were falsely generated, each report constituting a separate count:

| Count | Date | Conduct |
| --- | --- | --- |
| 20 | January 24, 2011 | Submission of 2010 third quarter report stating that 4,858,200 RINs were generated and 3,238,796 gallons of biodiesel were produced by Green Diesel. |
| 21 | January 24, 2011 | Submission of 2010 fourth quarter report stating that 14,256,327 RINs were generated and 9,504,210 gallons of biodiesel were produced by Green Diesel. |
| 22 | May 4, 2011 | Submission of 2011 first quarter report stating that 18,075,300 RINs were generated and 12,050,187 gallons of biodiesel were produced by Green Diesel. |

All in violation of Title 42, United States Code, Section 7413(c)(2)(A).

## COUNTS 23 - 68 -- Engaging in Monetary Transactions in Property
## Derived From Specified Unlawful Activity -- 18 U.S.C. § 1957

45.     The Grand Jury realleges and incorporates by reference the allegations contained
in Paragraphs 1 through 13, Paragraphs 15 through 40, and Paragraph 42, as if fully set forth
herein.

46.     Beginning at a time unknown to the Grand Jury, but not later than January 2011,
and ending sometime after July 2011, in the Southern District of Texas and elsewhere, defendant
Philip Joseph Rivkin did knowingly engage in monetary transactions by, through, and to financial
institutions, affecting interstate commerce, in criminally derived property of a value greater than
$10,000.00, that is, deposits, withdrawals, transfers, and exchanges described below of United
States currency, funds, and monetary instruments in the amounts specified below, such property
having been derived from a specified unlawful activity, that is, mail fraud in violation of Title 18,
United States Code, Section 1341, and wire fraud in violation of Title 18, United States Code,
Section 1343, related to the fraudulent RINs scheme set forth above.

47.     On or about the dates set forth for each count listed below, defendant Philip
Joseph Rivkin did knowingly use the proceeds of the scheme to commit wire fraud and mail
fraud to engage in the monetary transactions more fully described below:

| Count | Date | Monetary Transaction / Financial Institution | Criminally Derived Property |
|---|---|---|---|
| 23 | January 20, 2011 | Wire transfer from Wells Fargo account x7890 to Wells Fargo account x7900 in the amount of $188,768.70 | $127,394.43 |

| 24 | January 21, 2011 | Wire transfer from Wells Fargo account x7890 to Bank of America account x9112 in the name of D.D. | $150,000.00 |
|----|------------------|--------------------------------------------------------------------------------------------------|-------------|
| 25 | February 1, 2011 | Wire transfer from Wells Fargo account x7890 to JPMorgan Chase account x3182 (payment to Del Mar Onshore Hedge Fund in the amount of $2,250,000.00) | $1,971,668.21 |
| 26 | February 8, 2011 | Wire transfer from Wells Fargo account x7890 to JPMorgan Chase account x9265 (artwork purchased from Camera Lucida in the amount of $1,267,000.00) | $449,682.76 |
| 27 | February 9, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $800,000.00 |
| 28 | February 23, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $1,000,000.00 |
| 29 | February 23, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $1,000,000.00 |
| 30 | February 23, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $1,000,000.00 |
| 31 | February 23, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $490,000.00 |
| 32 | February 25, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $140,000.00 |
| 33 | March 8, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x5904 | $1,000,000.00 |
| 34 | March 8, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x5904 | $100,000.00 |

| 35 | March 9, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 in the amount $180,405 | $152,584.49 |
| 36 | March 10, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 in the amount $1,000,000 | $979,591.21 |
| 37 | March 10, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $400,000.00 |
| 38 | March 11, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $228,564.80 |
| 39 | March 17, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 in the amount $1,000,000 | $997,231.01 |
| 40 | March 17, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $1,000,000.00 |
| 41 | March 17, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $700,000.00 |
| 42 | March 31, 2011 | Wire transfer from Wells Fargo account x7890 to JPMorgan Chase account x9265 (artwork purchased from Camera Lucida in the amount of $1,400,000) | $879,689.53 |
| 43 | March 31, 2011 | Wire transfer from Wells Fargo account x7890 to JPMorgan Chase account x9265 (artwork purchased from Camera Lucida) | $230,000.00 |
| 44 | March 31, 2011 | Wire transfer from Wells Fargo account x7890 to Golden Bank account x0043 (payment to Apex Spectral Technology) | $213,660.00 |
| 45 | March 31, 2011 | Wire transfer from Wells Fargo account x7890 to JPMorgan Chase account x9265 (artwork purchased from Camera Lucida) | $150,000.00 |
| 46 | April 11, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x5904 | $497,500.00 |

| 47 | April 11, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x5904 | $375,000.00 |
| 48 | April 11, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x5904 | $200,000.00 |
| 49 | Arpil 12, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7576 | $999,999.00 |
| 50 | April 12, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x5904 | $607,874.87 |
| 51 | April 12, 2011 | Wire transfer from Wells Fargo account x7890 to JPMorgan Chase account x8592 (artwork purchased from Zabriske Gallery) | $260,000.00 |
| 52 | April 19, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $999,920.21 |
| 53 | April 19, 2011 | Wire transfer from Wells Fargo account x7890 to RBS Citizens Bank account x7923 (payment to Nidera Energy) | $264,776.93 |
| 54 | May 10, 2011 | Wire transfer from Wells Fargo account x7890 to JPMorgan Chase account x3182 (payment to Del Mar Onshore Hedge Fund in the amount of $2,000,000) | $1,911,979.66 |
| 55 | June 7, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x3016 in the amount $999,000 | $984,982.50 |
| 56 | June 7, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x3016 | $600,000.00 |
| 57 | June 7, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x3016 | $200,000.00 |

| 58 | June 15, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x3016 | $986,660.21 |
| 59 | June 15, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x5904 | $100,624.57 |
| 60 | June 24, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 in the amount $999,999.03 | $831,293.64 |
| 61 | June 24, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $999,999.02 |
| 62 | June 24, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $999,999.01 |
| 63 | June 24, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $99,999.03 |
| 64 | June 27, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $999,999.01 |
| 65 | June 27, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $234,425.57 |
| 66 | June 29, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 in the amount $999,999.01 | $953,380.42 |
| 67 | June 29, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $909,999.03 |
| 68 | June 29, 2011 | Funds transfer from Wells Fargo account x7890 to Wells Fargo account x7900 | $500,000.00 |

All in violation of Title 18, United States Code, Section 1957.

The Grand Jury further finds that:

## NOTICE OF FORFEITURE
(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

1.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the United States gives notice to defendant Philip Joseph Rivkin that in the event of his conviction of any of the offenses charged in Counts 1 - 19 of this Indictment (violations of 18 U.S.C. § 1341 or § 1343), all property, real or personal, which constitutes or is derived from proceeds traceable to a scheme to defraud, is subject to forfeiture.

## NOTICE OF FORFEITURE
(18 U.S.C. §§ 982(a)(1) & 982(b)(1))

2.      Pursuant to Title 18, United States Code, Sections 982(a)(1) and 982(b)(1), the United States gives notice to defendant Philip Joseph Rivkin that in the event of his conviction of any of the offenses charged in Counts 23 - 68 of this Indictment (violations of 18 U.S.C. § 1957), all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

## MONEY JUDGMENT

3.      Defendant Philip Joseph Rivkin is notified that upon conviction, a money judgment may be imposed in an amount equal to the total value of the property subject to forfeiture.

## PROPERTY SUBJECT TO FORFEITURE

4.      The property to be forfeited includes, but is not limited to, the following:

a.  the proceeds of the scheme to defraud, which amount is at least

$26,360,450;

b.  the property involved in the violations of 18 U.S.C. § 1957, which amount

is at least $29,678,479.12;

c.  the artwork seized on or about July 12, 2012, that is the subject of Civil

Action No. 13-1107 (D.N.J.);

d.  all property described below:

| Asset No. | Asset Description | Date Acquired |
|-----------|------------------|---------------|
| 1 | 2009 Lamborghini  B VIN HWBU37S69LA03500 | 11/14/2011 |
| 2 | 2010 Maserati B VIN ZAM39KKA6A0051259 | 12/20/2010 |
| 3 | 2010 Bentley B VIN SCBBR9ZA8AC063171 | 12/26/2010 |
| 4 | N629TS - Canadair LTD airplane | 12/30/2010 |

## SUBSTITUTE ASSETS

6.  Defendant Philip Joseph Rivkin is notified that in the event that property subject

to forfeiture, as a result of any act or omission of the Defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to or deposited with a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be divided without

-20-

difficulty,

the United States will seek to forfeit any other property of the Defendant up to the total value of

the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as

incorporated by reference in Title 28, United States Code, Section 2461(c), and Title 18, United

States Code, Section 982(b)(1).

A TRUE BILL:

Original signature on File

FOREPERSON OF THE GRAND JURY

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

By: _Leslie E. Lehnert_

Leslie E. Lehnert
Trial Attorney
Environmental Crimes Section
United States Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, DC  20044-7611
202-514-1761
leslie.lehnert@usdoj.gov