United States District Court
Southern District of Texas
FILED

JUN 1 5 2015

David J. Bradley, Clerk of Court

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:14-CR-250 |
| | § | |
| PHILIP JOSEPH RIVKIN, | § | |
| | § | |
| a/k/a FELIPE POITAN ARRIAGA | § | |
| | § | |

-------------------------------------------------------

## PLEA AGREEMENT

The United States of America, by and through John C. Cruden, Assistant
Attorney General for the Environment and Natural Resources Division of the
United States Department of Justice, and Leslie E. Lehnert, Trial Attorney, and the
defendant, PHILIP JOSEPH RIVKIN ("Defendant"), and Defendant's counsel,
pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal
Procedure, state that they have entered into an agreement, the terms and conditions
of which are as follows:



## Defendant's Agreement

1.  Defendant agrees to plead guilty to Count Nineteen and Count Twenty-Two of the Indictment. Count Nineteen charges Defendant with mail fraud, in violation of Title 18, United States Code, Section 1341. Count Twenty-Two charges Defendant with making a false statement under the Clean Air Act, in violation of Title 42, United States Code, Section 7413(c)(2)(A). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment proven to a jury or judge beyond a reasonable doubt.

## Punishment Range

2.  The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1341, is imprisonment of not more than 20 years and a fine of not more than $250,000 or twice the gross gain or loss, whichever is greater. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. See Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). The **statutory** maximum penalty for each violation of Title 42, United States Code, Section 7413(c)(2)(A), is imprisonment of not more than 2 years and a fine of not more than $250,000 or twice the gross gain or loss, whichever is greater. Additionally, Defendant may receive a term of supervised



release after imprisonment of not more than one year. See Title 18, United States Code, Sections 3559(a)(5) and 3583(b)(3). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. See Title 18, United Stated Code, Sections 3559(a)(5) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Waiver of Appeal and Collateral Review

4.      Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to

-3-



appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. Defendant may appeal only if (a) the sentence imposed is above the statutory maximum, or (b) the sentence includes an upward enhancement or adjustment from the Sentencing Guidelines that was not requested by the United States. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

5.     In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel or the United States is not binding on the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.  Defendant

-4-



further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. See United States v. Booker, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

6.     Defendant understands and agrees that each and all waivers contained in the agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

7.     The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Count Nineteen and Count Twenty-Two of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b)     The parties stipulate to the following calculation of Defendant's offense level under the Sentencing Guidelines, prior to the application of Section 3E1.1(a) and (b), and acknowledge that this stipulation does not bind the Court:

Count Nineteen

Base Offense Level (§ 2B1.1(a)(1))                              7



Enhancements

| | |
|---|---|
| Loss Amount Exceeds $50 million (§ 2B1.1(b)(1)(M)) | 24 |
| Ten or more victims (§ 2B1.1(b)(2)(A)(i)) | 2 |
| Sophisticated means (§ 2B1.1(b)(10)(C)) | 2 |
| Adjusted Offense Level | <u>35</u> |

(c)     At the time of sentencing the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two-level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines;

(d)     If Defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the offense level determined prior to the operation of Section 3E1.1(a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate resources efficiently, the United States agrees to request an additional one-level downward adjustment;

(e)     The United States agrees to recommend a sentence at the low end of the adjusted offense level stipulated above, following any adjustments pursuant to U.S.S.G. Section 3E1.1(a) and (b); and

(f)     The United States acknowledges that Defendant reserves the right to seek a variance pursuant to Title 18, United States Code, Section 3553(a), from the stipulated calculation of Defendant's offense level under the Sentencing Guidelines set forth above.



## Agreement Binding
## Environmental Crimes Section Only

8.     The United States agrees that it will not further criminally prosecute Defendant for offenses arising from conduct charged in the indictment. This plea agreement binds only the Environmental Crimes Section of the United States Department of Justice and Defendant. The United States will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested. The United States Attorney's Office for the Southern District of Texas is not bound by this agreement, but has advised that it does not have an open investigation concerning the conduct made the basis of the indictment in U.S. v. Rivkin (4:14-CR-250), nor does it intend to initiate such an investigation.

## United States' Non-Waiver of Appeal

9.     The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

-7-



(d)     to file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

## Immigration Consequences

10.     If Defendant is not a citizen of the United States, a plea of guilty may result in deportation, removal, and/or exclusion from admission to the United States, or the denial of naturalization. A plea of guilty may also result in Defendant being permanently barred from legally entering the United States after being deported, removed, and/or excluded. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Sentence Determination

11.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that:

- for purposes of sentencing, restitution, and forfeiture, the total Loss Amount in this case exceeds $51,000,000.

-8-



Defendant also acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines and the factors set forth in Title 18, United States Code, Section 3553(a). Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

12.    Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.



(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

13. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count Nineteen and Count Twenty-Two of the indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Defendant Philip Joseph Rivkin ("Rivkin") was a resident of Houston, Texas, who owned, operated, and managed several fuel and renewable fuel companies. These included Green Diesel, LLC ("Green Diesel"), Fuel Streamers, Inc. ("Fuel Streamers"), and Petro Constructors, LLC ("Petro Constructors").

From 2006 through 2007, Rivkin invested in and helped fund the construction of the Green Diesel biodiesel plant, located on the Houston ship

-10-



channel at 7600 Avenue P. Green Diesel purported to produce biodiesel, a renewable fuel, at the plant, but in fact, as Rivkin knew, the Green Diesel facility never produced biodiesel. From at least December 2008, Rivkin was Chief Executive Officer of Green Diesel. Green Diesel had office addresses at 1800 West Loop S., Suite 725, Houston, Texas, and 3050 Post Oak Boulevard, Suite 500, Houston, Texas. In addition, Rivkin was Chief Executive Officer of Fuel Streamers and Chief Executive Officer of Petro Constructors, both of which shared the office address of 3050 Post Oak Boulevard, Suite 500, Houston, Texas.

As part of his business operations, Rivkin used and controlled the following bank accounts:

    a.    Wells Fargo checking account xxxx7890 in the name of Green Diesel, 3050 Post Oak Boulevard, Suite 500, Houston, Texas;

    b.    Wells Fargo checking account xxxx7900 in the name of Fuel Streamers, 3050 Post Oak Boulevard, Suite 500, Houston, Texas;

    c.    Wells Fargo checking account xxxx5904 in the name of Philip J. Rivkin, Houston, Texas;

    d.    Wells Fargo checking account xxxx3016 in the name of Petro Constructors, 3050 Post Oak Boulevard, Suite 500, Houston, Texas;

    e.    Wells Fargo checking account xxxx7576 in the name of Fuel Streamers, 3050 Post Oak Boulevard, Suite 500, Houston, Texas.

Renewable fuels are fuels produced from renewable biomass that are used to replace or reduce the quantity of fossil fuel present in transportation fuel, heating oil, or jet fuel. Such fuels include corn-based ethanol and biodiesel. Biodiesel is a



type of renewable fuel that can be used in diesel engines and is typically made from vegetable oils or animal fats.

Through amendments to the Clean Air Act, the EPA was required to establish a program to incorporate renewable fuel into the national fuel mix, with the volume of renewable fuel increasing annually from 4 billion gallons in 2006 to 36 billion gallons in 2022. As part of the program, EPA established a system of tradable credits for renewable fuels to facilitate compliance by the petroleum refiners and importers who were collectively responsible for meeting the annual renewable volume obligation, known as the RVO. These tradable credits are known as Renewable Identification Numbers or RINs. Each RIN is a unique identifier for a volume of renewable fuel, and RINs are the basic currency for the renewable fuel program.

RINs are generated by a producer or importer of renewable fuel. At the beginning of the first renewable fuel standard ("RFS1") program, RINs were documented through paper filings submitted to the EPA. In July 2010 with the advent of RFS2, EPA introduced an electronic system for documenting RINs, an internet-accessible EPA database known as the EPA Moderated Transaction System ("EMTS"). Assigned RINs transfer with the renewable fuel when ownership of that fuel changes, but under certain circumstances, the assigned RINs can be separated from the renewable fuel and traded independently, leading to the



development of a secondary market for separated RINs. It is illegal for a producer or importer of renewable fuel to generate a RIN for which the applicable renewable fuel volume was not produced. In addition, RFS2 imposes reporting and recordkeeping requirements for all producers of renewable fuel, including quarterly RIN generation reports.

All EMTS activity is conducted through EPA's Central Data Exchange ("CDX"). Users of EPA's CDX must create a CDX account with an individual user identification, which is password protected. In February 2009, Rivkin registered with EPA's CDX and established a "User ID" of PRIVKIN2, with pjr@dollarbill.net listed as Rivkin's email contact.

Starting in February 2009, Rivkin began submitting documentation and information to EPA claiming that the Green Diesel facility was a biodiesel production facility. This included statements reflecting alleged production of biodiesel and claiming the generation of RINs on the gallons alleged to have been produced.

For example, by letter dated November 30, 2009, to an EPA contractor, Rivkin provided a report of Green Diesel biodiesel production between October 2008 through October 2009, claiming that Green Diesel produced 22,135,092 gallons during that time frame and generated 33,202,678 RINs, which is



approximately 1.5 times the total claimed gallons. In reality, Rivkin knew that the RINs were improperly generated.

In June 2010, Rivkin submitted to EPA a "Company Information Report" for Green Diesel, now with the company address listed as 3050 Post Oak Blvd., Suite 500, Houston, TX, 77056, in which Green Diesel's activities were listed as "Refiner, RIN owner, Renewable Fuels Importer, Biodiesel Producer, Renewable Fuels Exporter." For the process description, the report stated that the plant mixed raw vegetable oil with a catalyst and methanol, after which "an estrification [sic] reaction" took place, and then the oil went through a purification section, including methanol flashing, biodiesel and glycerin separation by gravity, and biodiesel drying and filtering. Rivkin signed this report, attesting that the information was correct, even though Rivkin knew that the Green Diesel facility was not operational.

From July 2010 through July 2011, Rivkin generated or caused to be generated 60,034,033 Green Diesel RINs in EMTS, fraudulently representing the production of millions of gallons of biodiesel that had not, in fact, been produced by Green Diesel. All of these RINs were fraudulent because, as Rivkin knew, there was no actual biodiesel produced by Green Diesel to support the generation of these RINs. From July 2010 into October 2010, Rivkin contracted with Clean Fuels Clearinghouse ("CFCH") in order for Green Diesel to transmit renewable

-14-



fuel and RIN-related data to the EPA through the CFCH RINSTAR system, an online renewable fuel and RIN management system. From July 2010 into October 2010, based on information submitted or caused to be submitted by Rivkin, CFCH generated 11,066,726 Green Diesel RINs in EMTS. From late October 2010 through July 2011, on at least 25 separate days, Rivkin logged into, or caused others to log into, the EPA's EMTS system using his PRIVKIN2 User ID to generate over 45 million RINs for Green Diesel, fraudulently representing the production of millions of gallons of biodiesel that had not, in fact, been produced by Green Diesel.

From July 2010 through July 2011, Rivkin sold or caused to be sold in excess of 59 million Green Diesel RINs for a total in excess of $51 million. During this time, Rivkin directed certain Green Diesel employees to sell Green Diesel RINs to various oil companies and brokers. Rivkin used and controlled his Wells Fargo bank accounts (xxxx7890, xxxx7900, xxxx5904, xxxx3016, and xxxx7576) to receive and transfer proceeds from the sale of the fraudulent Green Diesel RINS.

From January 2011 through July 2011, Rivkin sent out or caused to be sent at least sixteen invoices for sales of fraudulent Green Diesel RINs to at least six different purchasers, for a total of at least $25 million. The companies that purchased the false RINs wired their payments from various locations to Green Diesel's Houston, Texas, bank account at Wells Fargo (account xxxx7890).



In May 2011, Rivkin executed the mail fraud as alleged in Count Nineteen and made the Clean Air Act false statement as alleged in Count Twenty-Two when he submitted via FedEx, a commercial interstate carrier, a signed cover letter to U.S. EPA with the 2011 first quarter report stating that 18,075,300 RINs were generated by Green Diesel, based on alleged biodiesel production of 12,050,187 gallons at its facility. Rivkin mailed the required quarterly report to EPA in order to maintain the apparent legitimacy of Green Diesel's operations and its RINs. In fact, as Rivkin knew, no biodiesel was produced at the Green Diesel facility to support the generation of the 18,075,300 RINs reflected in this report, and thus the information in this report was false.

Most of the fraudulent RIN proceeds were transferred by wire into Rivkin's Green Diesel bank account xxxx7890. From there, Rivkin often transferred the fraudulent RIN proceeds to one or more of his other bank accounts (xxxx7900, xxxx5904, and xxxx3016). From January through June 2011, Rivkin transferred over $23 million in fraudulent RIN proceeds from his xxxx7890 account to one or more of his other accounts. Rivkin also used the fraudulent RIN proceeds to conduct other monetary transactions.

In December 2011, EPA's Air Enforcement Division sent Rivkin an official Request for Information under Section 114(a) of the Clean Air Act, requesting information concerning Green Diesel's renewable fuel production and import



activities, as part of a civil investigation into Green Diesel's compliance with the Clean Air Act and applicable fuel regulations.

On or about January 13, 2012, Rivkin, through his attorney, provided EPA's Air Enforcement Division a false written statement that, among other things, Green Diesel did not create fraudulent RINs during the requested time frame (2007 to 2011), and Green Diesel purchased biodiesel from a company called Sonorawest. In support of his false written statement to EPA, Rivkin provided to EPA false documents, which purported to show purchases of transesterified soybean oil from Sonorawest by Green Diesel. In further support of his false written statement, Rivkin submitted a certification signed by Rivkin, as Chief Executive Officer of Green Diesel, certifying that the information contained in the response to EPA's request for information and the accompanying documents was "true, accurate, and complete," when, in fact, Rivkin knew that the information he provided was false.

## Breach of Plea Agreement

14.    If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is



otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

15.    This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16.    Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information.



Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

19. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $51 million. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will

-19-



not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

20.     Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture and in any supplemental Notices is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

21.     Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of at least $51 million against him and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for that amount against him and in favor of the United States of America. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of his property, or his interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

22.     Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state. This includes but is not limited to the following:



-20-

United States v. Various Pieces of Artwork, Civil Action No. 13-1107 (D.N.J.),
VicNRG LLC v. Phillip J. Rivkin, et al., Cause No. 201305124-A (334th Dist. Ct.
Harris County, Tex.), and VicNRG LLC v. Green Diesel, LLC, et al., Cause No.
201305124 (334th Dist. Ct. Harris County, Tex.).

23.     Defendant consents to the order of forfeiture becoming final as to
Defendant immediately following this guilty plea, pursuant to Federal Rule of
Criminal Procedure 32.2(b)(4)(A).

24.     Subject to the provisions of paragraph 4 above, Defendant waives the
right to challenge the forfeiture of property in any manner, including by direct
appeal or in a collateral proceeding.

### Fines

25.     Defendant understands that under the Sentencing Guidelines the Court
is permitted to order Defendant to pay a fine that is sufficient to reimburse the
government for the costs of any imprisonment or term of supervised release, if any.
If the Court imposes a restitution obligation on the defendant, the government
agrees not to seek an additional fine. Defendant agrees that any fine imposed by
the Court will be due and payable immediately, and Defendant will not attempt to
avoid or delay payment. Subject to the provisions of paragraph 4 above, Defendant



waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

26.    This written plea agreement, consisting of 25 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.



27.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __June 15__, 2015.

_____
Philip Joseph Rivkin
Defendant

Subscribed and sworn to before me on __June 15__, 2015.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk



APPROVED:

    John C. Cruden
    Assistant Attorney General


By: _Leslie E. Lehnert_          _Jack B. Zimmermann_

    Leslie E. Lehnert              Jack B. Zimmermann
    Trial Attorney                  Attorney for Defendant
    Environmental Crimes Section
    Environment and Natural Resources
        Division
    United States Department of Justice

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:14-CR-250 |
| | § | |
| PHILIP JOSEPH RIVKIN, | § | |
| | § | |
| a/k/a FELIPE POITAN ARRIAGA | § | |

------------------------------------------------------

## PLEA AGREEMENT – ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____        May 21, 2015
Jack B. Zimmermahn                              Date
Attorney for Defendant


I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____        May 21 '15
Philip Joseph Rivkin                             Date
Defendant

-25-